**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**TERRY WHITFORD,**

                              Petitioner,

                v.                                    5:05-CV-1353
                                                                           (FJS)

**UNITED STATES OF AMERICA,**                        Related Criminal Action
                                                                           5:03-CR-316

                              Respondent.

_____

**APPEARANCES**                                             **OF COUNSEL**

**TERRY WHITFORD**
**12222-052**
FCI - Fairton
Satellite Camp
P.O. Box 420
Fairton, New Jersey 08320
Petitioner *pro se*

**OFFICE OF THE UNITED**                         **CARL G. EURENIUS, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
and Courthouse
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Respondent

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**[1]

The record reflects that on August 6, 2003, a grand jury sitting in the Northern District of New York returned a one count indictment against Petitioner, which alleged that, between February 19, 2003, and May, 2003, he knowingly and intentionally attempted to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  *See* Action No. 03-CR-316, Dkt. No. 1.  At that time, a warrant was issued for Petitioner's arrest.  *See id.*, Dkt. No. 4.  Officers of the Metro-Jefferson Drug Task Force of Jefferson County, New York, together with agents from the Drug Enforcement Agency, executed that warrant and arrested Petitioner in his home in Watertown, New York.  Subsequent to his arrest, a search of his home pursuant to a warrant revealed several of the components necessary to manufacture methamphetamine, together with six glass jars that subsequent testing established contained approximately ten ounces of a mixture containing methamphetamine.

On October 1, 2003, a federal grand jury returned a Superseding Indictment against Petitioner.  *See id.*, Dkt. No. 12.  Count 1 of that accusatory instrument alleged that Petitioner knowingly and intentionally attempted to manufacture methamphetamine from February 19, 2003, until May, 2003; and Count 2 of that same accusatory instrument alleged that, in August, 2003, Petitioner knowingly possessed with intent to distribute more than 50 grams of a mixture containing methamphetamine, contrary to 21 U.S.C. §§ 841(a) and 841(b)(1)(B).  The

---

[1] The Court has derived the background information contained in this Memorandum-Decision and Order from the documents filed in the present civil action, *Whitford v. United States*, 5:05-CV-1353 ("Action No. 05-CV-1353"), as well as the related criminal matter, *United States v. Whitford*, 5:03-CR-316 ("Action No. 03-CR-316").

Superseding Indictment also contained an allegation that Petitioner had a prior felony drug conviction, which would affect the penalty provisions to which he was subject with respect to both counts of the Superseding Indictment.

On October 30, 2003, the Government filed an Enhanced Penalty Information, pursuant to 21 U.S.C. § 851, in which it declared its intent to use Petitioner's prior felony drug conviction to increase his punishment under 21 U.S.C. § 841(b)(1)(B). *See* Action No. 03-CR-316, Dkt. No. 13.[2]

On February 15, 2005, following negotiations between Petitioner's appointed counsel and Assistant United States Attorney Carl G. Eurenius, the parties advised this Court that Petitioner had agreed to plead guilty to the Second Count in the Superseding Indictment, which charged him with possessing with intent to distribute more than 50 grams of a mixture and substance containing methamphetamine. Under the terms of his plea agreement, *see* Action No. 03-CR-316, Dkt. No. 36 ("Plea Agreement"), Petitioner, among other things, (1) acknowledged that he was subject to a mandatory minimum term of imprisonment of ten years pursuant to 21 U.S.C. § 841(b)(1)(B), *see* Plea Agreement at ¶ 2; (2) admitted that in August, 2003, he possessed with intent to distribute more than 50 but less than 200 grams of a mixture or substance containing what he knew to be a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B), *see id.* at ¶ 4(a); and (3) waived his right to appeal or collaterally attack pursuant to 28 U.S.C. § 2255 any sentence of imprisonment of 120 months or less, *see id.* at ¶ 12.

At the proceeding during which Petitioner formally entered his change of plea, he

---

[2] Petitioner's prior final felony drug conviction, combined with the Enhanced Penalty Information, caused him to be subject to a maximum term of life imprisonment with a mandatory minimum prison term of ten years.

explained to the Court that, although he had initially experienced some difficulty in understanding the legal proceedings that had been brought against him, he had subsequently spoken with his attorney who had clarified certain matters and assisted him in understanding the nature of the criminal proceedings. *See* Transcript of Change of Plea, dated February 15, 2005 ("Plea Tr."), attached to Action No. 05-CV-1353, Dkt. No. 6, at 5. Petitioner then made the following representations to the Court: (1) he understood everything that was contained in the Plea Agreement; (2) he had no questions about any of the contents of that agreement; and (3) he was satisfied with the legal representation that he had received in conjunction with the criminal matter. *See id.* The Court then asked Petitioner's counsel, Craig Schlanger, to place on the record the steps he had taken to esnure that Petitioner was aware of the charges against him and to explain to him the terms and conditions of the Plea Agreement. Attorney Schlanger then declared that, in conjunction with the criminal charges brought against Petitioner, counsel had, among other things,

> received . . . full and adequate discovery from [the] United States Attorney consisting of . . . all police reports, including . . . lab reports as to the analysis, chemical analysis of the . . . various substances that were recovered which are the subject of the charges, and I've had an opportunity to review all of those as well, and I've reviewed all of the discovery materials with Mr. Whitford.

*See* Plea Tr. at 6.

Petitioner then acknowledged the following facts during the colloquy: (1) he was pleading guilty to possessing with intent to distribute in excess of 50 grams of methamphetamine; (2) he faced a mandatory minimum term of ten years imprisonment and a maximum term of life imprisonment; (2) his attorney had explained to him the effect of the United States Sentencing

Guidelines on his sentence; (4) he had previously been convicted of a felony; and (5) he was aware that he was waiving numerous rights by pleading guilty. *See id.* at 7-10.

Prior to the sentencing hearing, Petitioner's counsel filed a sentencing memorandum with this Court. *See* Action No. 03-CR-316, Dkt. No. 39 ("Sentencing Memorandum"). In that memorandum, counsel argued that the total amount of mixtures containing methamphetamine for which the Government sought to hold Petitioner accountable – 200 to 350 grams, *see* Pre-Sentence Report at ¶¶ 7, 13 – was improper because the language of the Plea Agreement stipulated that the amount of mixtures containing methamphetamine that Petitioner possessed was between 50 and 200 grams. *See* Sentencing Memorandum at 2-3. At Petitioner's sentencing hearing on July 7, 2005, AUSA Eurenius conceded that, in keeping with the "spirit" of the plea negotiations, the Court should only hold Petitioner accountable for between 50 and 200 grams of substances containing methamphetamine. *See* Transcript of Sentencing of Terry Whitford, dated July 7, 2005, at 4-5.[3] This Court adopted that joint recommendation and, after taking into account Petitioner's acceptance of responsibility, found his total offense level under the Sentencing Guidelines to be 23. *See* Sentencing Tr. at 6.

Before this Court imposed sentence on him, Petitioner addressed the Court. At that time, he conceded that "what [he] did was wrong" and expressed his hope that the Court would not sentence him to a term of life imprisonment. *See* Sentencing Tr. at 8. Significantly, he never asserted at that time that the type or quantity of drugs to which he pled guilty, and for which he

---

[3] If the Government had succeeded in its request to hold Petitioner accountable for between 200 and 350 grams of methamphetamine, his base offense level would have been 28, rather than the level of 26 that this Court ultimately concluded was appropriate in determining the sentence to impose on Petitioner. *See* Sentencing Tr. at 5-6.

was to be sentenced, was erroneous. *See, generally*, Sentencing Tr. This Court ultimately imposed the mandatory minimum sentence of 120 months imprisonment on Petitioner. *See id.* at 9. He did not file any appeal relating to his conviction or his sentence. *See* Action No. 05-CV-1353, Dkt. No. 1, Motion to Vacate, Set Aside or Correct Sentence ("Motion to Vacate"), at ¶ 8.

On October 20, 2005, Petitioner filed his Motion to Vacate. In that application, Petitioner claimed that (1) Attorney Schlanger improperly failed to challenge the actual weight of the substances that law enforcement officials seized; (2) the substance that Petitioner was accused of criminally possessing was "not usable or ingestible;" and (3) there was insufficient evidence to establish that Petitioner ever possessed 50 grams or more of methamphetamine. *See* Motion to Vacate, Grounds One through Four.[4]

The United States Attorney for the Northern District of New York filed a memorandum of law in opposition to Petitioner's application in which the Government argued that Petitioner was both procedurally barred from asserting the claims he raised in his application and, additionally, that such claims were without substance. *See* Action No. 05-CV-1353, Dkt. No. 6 ("Government's Memorandum"). Petitioner thereafter filed a reply memorandum in further support of his application. *See id.*, Dkt. No. 8 ("Reply"). In that Reply, Petitioner reiterated his claims (1) that his attorney wrongfully failed to challenge the Government's allegation that Petitioner possessed more than 50 grams of methamphetamine; and (2) that the substances that the police seized did not contain methamphetamine but instead were "pure waste." *See* Reply at Points I, II, IV, VI. Petitioner also appeared to argue, for the first time in his Reply, (1) that his

---

[4] It is not entirely clear to the Court precisely how many grounds for relief Petitioner seeks to assert in this action. *See, generally,* Motion to Vacate. Regardless, the Court will address all the theories that he raises therein in this Memorandum-Decision and Order.

guilty plea was not knowingly, intelligently and voluntarily made and (2) that his counsel wrongfully failed to object to the issuance of the search warrant. *See* Reply at Points III, V.

## II. DISCUSSION

A.      **Petitioner's waiver of his right to file a collateral challenge to his conviction**

As noted above, Respondent initially argues that Petitioner is precluded from raising his claims in this collateral challenge to his conviction in light of the waiver he executed in his plea agreement. *See* Government's Memorandum at 7-9.

"It is well established in this Circuit that a knowing and voluntary waiver of the right to appeal is enforceable." *United States v. Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) (citing *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see DeLeon v. United States*, Nos. 02 CIV. 9745, 00 CR. 1236, 2003 WL 21769836, *3 (S.D.N.Y. July 30, 2003) (defendant's waiver of right to appeal sentence that is within an agreed upon Sentencing Guidelines range "is enforceable when a 'defendant . . . knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement'" (quoting *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998)). Thus, where the hearing held in conjunction with a plea agreement establishes that the defendant entered into the agreement voluntarily and with an understanding of its terms, including the waiver of his right to file an appeal or collateral challenge to his conviction, the waiver is enforceable. *See United States Jimenez*, Nos. 01 Civ. 7256, 99 CR. 44, 2004 WL 1077956, *1 (S.D.N.Y. May 12, 2004) (citing *Liberato v. United States*, No. 99 Cr. 137, 01 Civ. 3056, 2001 WL 930238, at *5 (S.D.N.Y. Aug. 16, 2001)) (other citation omitted).

In the related criminal matter, the Court specifically referred to the appellate waiver that Petitioner executed in his Plea Agreement. *See* Plea Tr. at 11. He thereafter pled guilty to knowingly and intentionally possessing with intent to distribute in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 841. *See id.*[5] Since the Court did not sentence Petitioner to a term of imprisonment exceeding 120 months and, as more fully addressed below, he knowingly, intelligently and voluntarily pled guilty, Petitioner's waiver is valid and enforceable. He is, therefore, procedurally barred from asserting any of the claims raised herein that do not attack the process by which his guilty plea and waiver were procured. *See Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195-96 (2d Cir. 2002) (citation omitted).

The Court, therefore, finds that Petitioner is precluded from asserting in this action his claims that challenge the weight or chemical composition of the materials that law enforcement agents seized and those claims that argue that there was insufficient evidence to convict Petitioner.

**B.    Petitioner's ineffective-assistance-of-counsel claims**

Although Petitioner is procedurally barred from raising the above-referenced claims due to his valid waiver, the Court notes that, where a party claims that such waiver was the product of ineffective assistance of counsel, he may properly assert such a claim in a collateral challenge to his conviction notwithstanding the waiver. *See Frederick*, 308 F.3d at 195-96; *see also Sharpley v. United States*, 499 F. Supp. 2d 208, 211 (N.D.N.Y. 2007) (holding that, "[r]egardless of

---

[5] The Court reiterated that waiver, without objection or comment from Petitioner, at his sentencing. *See* Sentencing Tr. at 10-11.

Petitioner's waiver, Petitioner is entitled to file a collateral attack under Section 2255 claiming ineffective assistance of counsel"). The Court will, therefore, consider Petitioner's ineffective-assistance-of-counsel claims.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Courts have long recognized this right to counsel as one that entitles a defendant to the right to the effective assistance of counsel. *See McMahon v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (citations omitted). Under the now familiar two-part test that the Supreme Court enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), an individual who claims he received the ineffective assistance of counsel must demonstrate that the representation (1) "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) prejudiced the petitioner, *see id.* at 694. *See Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006); *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000).

In this case, Petitioner asserts two general theories to support his ineffective assistance claims. He argues that his trial counsel wrongfully failed to challenge (1) the weight and quality of the drug to which Petitioner pled guilty to criminally possessing with intent to distribute and (2) the validity of the search warrant. *See* Motion to Vacate, Grounds 1-4; Reply at Points I, II, IV and V.

In his challenge regarding the drug evidence that the Government obtained against him, Petitioner argues that the substance that the law enforcement officials seized "was pure wast[e]," and "had no marketable methamphetamine which could be consumed . . . or even sold to the general public." *See* Reply at Points I, IV.

However, Petitioner has not offered anything more than pure conjecture to support his current, unsubstantiated claim that the substance he was alleged to have criminally possessed contained no measurable amount of methamphetamine. *See, e.g.,* Reply at 7. Courts cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"). Moreover, this claim appears to overlook the fact that, except for certain circumstances not relevant herein, when considering the relevant weight of an illegal narcotic in this context, "the weight of the mixture is determined without regard to the drug's purity." *United States v. Stephenson*, 183 F.3d 110, 118-19 (2d Cir. 1999) (citation omitted).

Finally, Petitioner's own statements at his change of plea hearing contradict his current claim regarding the chemical composition of the substances that law enforcement agents seized. At the change of plea proceeding, he admitted that he "possessed with intent to distribute more than 50 but fewer than 200 grams of a mixture and substance containing methamphetamine." *See* Plea Tr. at 11. Statements made during a plea allocation are presumptively true "absent credible reason[s] 'justifying departure from their apparent truth.'" *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) (quotation omitted);[6] *United States v. Caesar*, 94 CR. 59, 1995 WL 312443, *3 (S.D.N.Y. May 23, 1995) (quotation omitted); *see also United States v. Neapolitan*, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (stating that "defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving

---

[6] As the Supreme Court observed in *Blackledge v. Allison*, 431 U.S. 63 (1977), a criminal defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* at 74.

assertion").

Since the objective evidence establishes that the substance Petitioner criminally possessed weighed at least 50 grams and contained methamphetamine, his trial counsel did not act in an objectively unreasonable manner in failing to contest this aspect of the Government's evidence relating to Petitioner.[7]

With respect to Petitioner's claim regarding his counsel's failure to challenge the validity of the search warrant, the record suggests that the Metro-Jefferson Drug Task Force had been investigating Petitioner on suspicion of manufacturing methamphetamine after the police had received numerous calls from local stores which indicated that he had been purchasing items commonly used to manufacture that drug from those stores. The personal observations of law enforcement personnel buttressed those reports; while he was under surveillance, Petitioner was observed purchasing various items used to manufacture methamphetamine. Those facts clearly provided the police with the probable cause necessary to secure and execute properly the search warrant at Petitioner's residence. Thus, counsel did not act in an objectively unreasonable manner when he failed to argue that the search warrant was issued without the requisite probable cause.

### C.   Validity of Petitioner's guilty plea

Petitioner challenges the validity of his guilty plea, arguing that he lacked the mental

---

[7] As noted above, Petitioner's counsel challenged the overall weight of the methamphetamine that Petitioner was accused of criminally possessing; in counsel's sentencing memorandum, he successfully argued that the amount of that substance for which the Government sought to hold Petitioner accountable – 200 to 350 grams – was erroneous. *See* Sentencing Memorandum at 2-3; Sentencing Tr. at 6.

capacity necessary to enter the guilty plea intelligently. *See* Reply at Point III.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)) (other citations omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (guilty plea is valid when it is both knowingly and voluntarily made).

Additionally, it is beyond cavil that "the criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453 (1992) (citing *Drope v. Missouri*, 420 U.S., at 172-173, 95 S. Ct., at 904)) (other citations omitted). The test for determining whether an individual is competent to participate effectively in his defense to criminal charges against him is well settled; the court must ascertain whether the individual has the "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam) (footnote omitted)); *see also Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (citations omitted); *Pate v. Robinson*, 383 U.S. 375, 385 (1966) (due process requires that a competency hearing be held when the facts or events presented to the court raise a bona fide doubt regarding a defendant's competency).[8]

---

[8] "The focus of a competency inquiry is the defendant's . . . ***ability*** to understand the proceedings . . . [while the purpose of the court's colloquy during a plea allocution] is to

(continued...)

The Court engaged in an extensive colloquy with Petitioner at the hearing at which he ultimately pled guilty to the Second Count of the Superseding Indictment. Petitioner's responses to the questions that the Court posed to him at that time, *see* Plea Tr. at 2-5, 7-10, belie his current claim that, at the time he entered his guilty plea, he lacked the mental capacity to understand the nature of the charges against him and the consequences of his guilty plea. *See, e.g.,* Reply at 4-5. He has, therefore, failed to establish that he is entitled to the relief he seeks based upon this claim.[9]

### III. CONCLUSION

Petitioner waived his right to file a collateral challenge to his conviction and sentence. Since that waiver is valid and enforceable against him for the reasons discussed above, he is procedurally barred from asserting a challenge regarding the weight or chemical composition of the materials that law enforcement agents seized that formed the basis of the charges brought against Petitioner, as well as claiming that there was insufficient evidence to convict Petitioner. Additionally, the Court has reviewed the other claims that Petitioner has asserted in his Motion to Vacate and in his Reply and finds that, because those claims lack substance, they must similarly be denied. Finally, because Petitioner has not made a substantial showing of the denial of a

---

[8](...continued)
determine whether the defendant actually ***does*** understand the significance and consequences of a . . . decision [to plead guilty] and whether the decision is uncoerced. . . ." *Godinez*, 509 U.S. at 401 n.12 (emphasis added) (internal citations omitted).

[9] To the extent that this claim also argues that Petitioner's counsel rendered ineffective assistance by failing to advise the Court of Petitioner's diminished mental capacity, *see* Reply at Point III, that claim is without merit because there is no proof that Petitioner's mental capacity precluded him from properly entering his guilty plea.

constitutional right with respect to the criminal proceedings below, *see* 28 U.S.C. § 2253(c)(2), this Court will not issue any Certificate of Appealability in this matter. *See* 28 U.S.C. § 2253(c)(1)(B); *Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

Accordingly, after carefully reviewing the files in this matter and in the related criminal action, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Petitioner's Motion to Vacate is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of his Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

Dated: April 9, 2008
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge